**DEREK SMITH LAW GROUP, PLLC**
CATHERINE W. LOWRY, ESQUIRE
Attorney ID No. 316291
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0832
catherine@dereksmithlaw.com
*Attorneys for Plaintiff Jane Doe*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE,<br><br>                    Plaintiff,<br><br>        v.<br><br>IRON HILL BREWERY OF NEWTOWN, LLC; SHAUN SAWYER; DAN MOSKAL; AND NESTOR PAIZ;<br><br>                    Defendants. | Civil Action No.<br><br>PLAINTIFF DEMANDS A TRIAL BY JURY |

### COMPLAINT

Plaintiff, Jane Doe, by and through her attorneys, Derek Smith Law Group, PLLC, by way of this Complaint, state:

### NATURE OF THE CASE

1.      This action arises out of the unlawful discrimination and hostile work environment by Defendants against Plaintiff based on her sex/gender and the unlawful retaliation of Defendants in response to Plaintiff's reports of, and opposition to, the unlawful comments and conduct of the Defendants.

2.      Plaintiff brings this action charging that Defendants violated her rights pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act,

as amended, 42 U.S. §§ 951, et seq. ("PHRA"), and Pennsylvania Common Law.

3.      Plaintiff seeks damages to redress the injuries she has suffered as a result of Defendants' actions.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district court jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

5.      This Court has jurisdiction in that this action involves a Federal Question.

6.      This Court has supplemental jurisdiction under 28 U.S.C. §1367.

7.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

8.      Pursuant to 28 U.S.C. §1391(b), venue is proper in this district based upon Defendants' residency and due to the fact that a substantial part of the events or omissions giving rise to the claim occurred within Delaware County, in the Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9.    On September 22, 2023, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and dual filed with the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII, the PHRA, and Pennsylvania Common laws.

10.    On _____, 2025, Plaintiff was issued a "Determination and Notice of Rights" letter by the EEOC.

11.    Plaintiff's PHRA claims are ripe because more than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's Charge.

12.    Plaintiff has complied with all administrative prerequisites to bring this lawsuit.

## **PARTIES**

13.    Plaintiff Jane Doe (hereinafter referred to as "Plaintiff") is an individual female who is a resident of the Commonwealth of Pennsylvania.

14.    Plaintiff is referred to herein as Jane Doe due to the extreme hardship such revelation of her identity would cause and the need to protect victims of sexual crimes.

15.    Defendants are aware of Plaintiff's identity

16.    Defendant Iron Hill Brewery of Newtown, LLC (hereinafter referred to as "Defendant IHB") is a corporation existing under the existing law of the Commonwealth of Pennsylvania.

17.    At all times material, Defendant IHB's primary place of business was 2920 S. Eagle Rd., Newtown, PA 18940.

18.    At all relevant times, Defendant IHB was, and is currently, doing business in the Commonwealth of Pennsylvania and has continuously employed at least fifteen (15) individuals.

3

19.   At all relevant times, Defendant IHB has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000 (e), (g), and (h).

20.   At all times material, Defendant Shawn Sawyer (hereinafter referred to as "Defendant Sawyer") was and, upon information and belief, still is the General Manager at Defendant IHB.

21.   At all times material, Defendant Sawyer held a supervisory position over Plaintiff.

22.   At all times material, Defendant Dan Moskal (hereinafter referred to as "Defendant Moskal") was and, upon information and belief, still is a Manager at Defendant IHB.

23.   At all times material, Defendant Moskal held a supervisory position over Plaintiff.

24.   At all times material, Defendant Nestor Paiz (hereinafter referred to as "Defendant Paiz") was the Sous Chef at Defendant IHB.

25.   At all times material, Defendant Paiz held a supervisory position over Plaintiff.

26.   At all times material, Defendants were the joint employers of Plaintiff.

## MATERIAL FACTS

27.   Around April 6, 2023, Plaintiff began working for Defendant IHB as a Server.

28.   Plaintiff worked the majority of her shifts with Defendant Paiz.

29.   During these shifts, Defendant Paiz acted as the Executive Chef and/or in a supervisory capacity.

30.   Immediately upon her hire with Defendant IHB, Plaintiff was subjected to sex/gender discrimination and sexual harassment at the hands of Defendant Paiz.

31.   By way of example and by no means an exhaustive list, on Plaintiff's first day at Defendant IHB, Plaintiff worked with Defendant Paiz.

4

32.     During that shift, Defendant Paiz stated to Plaintiff, "You are one of the most beautiful girls I have ever seen."

33.     This caused Plaintiff to feel incredibly humiliated, embarrassed, uncomfortable, degraded, and emotionally distressed.

34.     Throughout Plaintiff's employment with Defendants, she routinely received unwanted and unwelcome comments from Defendant Paiz regarding her physical appearance.

35.     By way of example, and by no means an exhaustive list, Defendant Paiz often called Plaintiff "beautiful," "pretty," and would make comments about how he enjoyed the way Plaintiff smiled.

36.     Defendant Paiz made at least one comment regarding Plaintiff's appearance during every shift she worked with him.

37.     In addition, Defendant Paiz would often talk to other male members of the kitchen staff about Plaintiff's appearance.

38.     By way of example, on one occasion, Defendant Paiz made a comment to Plaintiff regarding her being "beautiful" and Plaintiff disregarded the compliment as it made her uncomfortable.

39.     Defendant Paiz proceeded to speak in Spanish to the male kitchen staff and referred to Plaintiff as a "puta" in Spanish which translates to "bitch" or "whore" in English.

40.     Defendant Paiz's comments were unwanted and unwelcome sexual harassment.

41.     On numerous occasions, after Plaintiff refused to engage with Defendant Paiz, Plaintiff overheard Defendant Paiz and the male kitchen staff refer to her as a "bitch," "stupid bitch," and "beautiful bitch" in Spanish.

42.    This caused Plaintiff to feel incredibly uncomfortable, humiliated, embarrassed, degraded, and distressed.

43.    Around June 2023, Defendant Paiz escalated his inappropriate conduct from unwanted comments to unwanted comments coupled with physical touching.

44.    By way of example, and by no means an exhaustive list, on one occasion, Plaintiff was in the dish area when Defendant Paiz approached her and stood close to her.

45.    Defendant Paiz told Plaintiff that she was "beautiful" while he took his hand and rubbed her shoulder.

46.    Plaintiff moved away from Defendant Paiz so that he was unable to touch her as it was unwanted and unwelcome.

47.    This happened on at least two other occasions.

48.    This caused Plaintiff to feel incredibly uncomfortable, humiliated, embarrassed, degraded, and distressed.

49.    Around June 23, 2023, Defendant Paiz inquired with Plaintiff as to whether or not she had a boyfriend.

50.    Plaintiff and her boyfriend had just broken up, however, she felt uncomfortable sharing that information with Defendant Paiz and so she told him that she did.

51.    Defendant Paiz asked Plaintiff if her boyfriend was Hispanic.

52.    Plaintiff informed Defendant Paiz that her boyfriend was Hispanic/Latino.

53.    Defendant Paiz responded, "it is good to know that you like Latinos."

54.    Upon information and belief, Defendant Paiz inquired about the ethnicity of Plaintiff's boyfriend because he wanted to know if Plaintiff was attracted to Hispanic men, as he was Hispanic

55. Plaintiff removed herself from the conversation as Defendant Paiz's questions and comments made her feel uncomfortable, degraded, and emotionally distressed.

56. When Defendant Paiz made inappropriate, unwanted, and unwelcome comments to Plaintiff, Plaintiff would attempt to change the conversation or would walk away.

57. Around June 30, 2023, Plaintiff worked a shift with Defendant Paiz which ended around 11 P.M.

58. It was Plaintiff's coworker's birthday and there was a cake to celebrate in Defendant IHB's courtyard.

59. When Plaintiff initially went to the courtyard, she observed Defendant Paiz dancing with three women, smacking their buttocks, and grinding on them.

60. Defendant Paiz then yelled to Plaintiff, "come dance with me."

61. Plaintiff respectfully declined Defendant Paiz's offer to dance with him.

62. However, Defendant Paiz refused to accept Plaintiff's answer of "no," and started begging Plaintiff by stating, "[Plaintiff] come on. Please. Just come dance with me."

63. Plaintiff declined and stated that she did not like to dance and did not want to dance with him, Defendant Paiz.

64. Defendant Paiz continued to ask Plaintiff to dance with him.

65. This caused Plaintiff to feel incredibly humiliated, embarrassed, uncomfortable, and distressed as Defendant Paiz refused to take no for an answer.

66. While Defendant Paiz continued to ask Plaintiff to dance with him, the three women, who Defendant Paiz had been dancing with, left.

67. Defendant Paiz walked over to Plaintiff and stood directly over top of her as she was sitting in a chair and begged her to dance with him.

68.  Plaintiff informed Defendant Paiz again that she did not want to dance with him, and she used her hands to signal no as well.

69.  Defendant Paiz proceeded to grab Plaintiff's hands and pulled her up out of her chair so that he could force her to dance with him.

70.  Plaintiff started to dance slightly with the hope that if she danced with him for a brief period, Defendant Paiz would stop harassing her.

71.  However, Defendant Paiz refused to let go of Plaintiff's hand when Plaintiff attempted to let go and break free from Defendant Paiz.

72.  Rather, Defendant Paiz put Plaintiff's hand in the air, spun her around so that her backside was towards him, placed his left hand on her waist, and pulled her in tightly against the front of his body.

73.  Defendant Paiz then began to rub his erect penis into Plaintiff's backside.

74.  With significant effort, and after a few minutes, Plaintiff was able to push and turn herself around so that her face was towards Defendant Paiz and his erect penis was no longer rubbing against her.

75.  However, Defendant Paiz continued to pull Plaintiff into him and when she turned around his face was in her chest as he is shorter than Plaintiff.

76.  As such, Plaintiff used her one hand that she had available, placed it on Defendant Paiz's shoulder, and pushed him away so that his face was no longer in her chest.

77.  Defendant Paiz still had a tight grip on Plaintiff's hand and refused to let go.

78.  Defendant Paiz then stated to Plaintiff, "So when are we going out?"

79.  Plaintiff was incredibly uncomfortable and distressed and attempted to explain to Defendant Paiz that she did not want to go out with him.

80. Defendant Paiz became angry with Plaintiff and began to yell and made comments about her ex-boyfriend.

81. As Defendant Paiz had never met Plaintiff's ex-boyfriend, nor had Plaintiff spoken to Defendant Paiz regarding her previous relationship, this cause Plaintiff fear and extreme emotional distress.

82. When Plaintiff attempted to defend her ex-boyfriend, Defendant Paiz became angrier.

83. Defendant Paiz proceeded to tell Plaintiff, "I can help you heal. I don't want a relationship either. I just want to go out with you."

84. Defendant Paiz again refused to accept Plaintiff's answer of no.

85. This caused Plaintiff to feel incredibly uncomfortable, humiliated, degraded, and distressed.

86. Shortly thereafter, Plaintiff's co-worker, Nick Last Name Unknown (hereinafter referred to as "Witness Nick"), approached Plaintiff and Defendant Paiz.

87. Upon information and belief, Witness Nick approached Plaintiff and Defendant Paiz as he noticed how uncomfortable Plaintiff was and how Defendant Paiz was grabbing Plaintiff.

88. Witness Nick wedged himself in between Plaintiff and Defendant Paiz and diverted Defendant Paiz's attention from Plaintiff.

89. Defendant Paiz released Plaintiff's hand at this time.

90. So distraught by the events that had just taken place, Plaintiff starred at the concrete and was unable to move.

91. Defendant Paiz then grabbed Plaintiff's hand again, pulled her close to him, and stated, "I just want to talk to you."

92.   Defendant Paiz then again attempted to dance with Plaintiff.

93.   Plaintiff informed Defendant Paiz that she did not want to dance with him and that she does not like to dance.

94.   Defendant Paiz replied "come on I will teach you," as he tightened his grip on Plaintiff and would not let her move or walk away.

95.   Defendant Paiz attempted to spin Plaintiff around.

96.   Upon information and belief, Defendant Paiz did so in order to rub his erect penis on her backside again.

97.   Plaintiff physically resisted and was able to turn herself back around to face Defendant Paiz, however, Defendant Paiz still had a tight grip on Plaintiff.

98.   Defendant Paiz then stated to Plaintiff, "I have seen you workout. If you can workout like that then you can dance."

99.   Plaintiff asked Defendant Paiz what he was talking about as she was unsure how he would have seen her work out.

100.  Defendant Paiz replied "Planet Fitness. I saw you work out."

101.  Plaintiff then recalled that the night prior she was at Planet Fitness, and she saw a man wearing black clothing with their hood up watching and following her around the gym.

102.  Upon information and belief, the individual wearing black clothing and watching Plaintiff from afar in the gym was Defendant Paiz.

103.  Defendant Paiz then asked Plaintiff, "who was that chica you were with?"

104.  Plaintiff responded, "you mean my seventeen (17) year old sister?"

105.  This caused Plaintiff incredible distress as her sister is a minor, and by his tone and mannerisms, Defendant Paiz appeared to be sexualizing her.

106. Defendant Paiz then stated "Oh yeah, her. Let me tell you, you two are just ahhhhh."

107. Defendant Paiz further made comments such as "I had no idea you had a body like that under your work clothes," "I was watching you the whole time. The way you work out is just ahhhhh," and "let me at least get your phone number."

108. This caused Plaintiff to feel incredibly humiliated, embarrassed, victimized, degraded, and distressed.

109. Plaintiff informed Defendant Paiz that she does not like to give out her phone number and she did not want to give her number to him.

110. Defendant Paiz began begging Plaintiff, stating "Please, please just give me your number" and "If you won't give me your number then can we at least workout together."

111. Plaintiff informed Defendant Paiz that she did not want to work out with him.

112. Defendant Paiz told Plaintiff that she should workout at Planet Fitness.

113. Upon information and belief, Defendant Paiz wanted Plaintiff to workout at Planet Fitness as he was a member and so that he could watch and continue to sexualize her.

114. Plaintiff's co-worker, Luke Quigly (hereinafter referred to as "Mr. Quigly"), then approached Defendant Paiz and Plaintiff.

115. Upon information and belief, Mr. Quigly approached the two in order to break up the conversation as it was visible that Plaintiff was uncomfortable.

116. Mr. Quigly started to dance in between Defendant Paiz and Plaintiff.

117. Upon information and belief, Mr. Quigly danced in between the two in an effort to have Defendant Paiz release the grip he had on Plaintiff.

118. However, Defendant Paiz refused to let go of Plaintiff and so Plaintiff was being pushed around as Mr. Quigly attempted to break the two of them up.

119.    Shortly thereafter, Sherri Last Name Unknown, a Shift Captain with Defendant IHB,

walked out to the courtyard and informed Plaintiff that she had not clocked out and she

needed to go inside to do so.

120.    Plaintiff was relieved as she was able to get away from Defendant Paiz and went inside to

clock out.

121.    Plaintiff immediately started to cry when she walked inside Defendant IHB as she was

incredibly humiliated, embarrassed, victimized, degraded, and distressed as a result of

Defendant Paiz.

122.    As Plaintiff attempted to collect herself, she turned around and immediately saw that

Defendant Paiz had walked in through the front door and followed her inside.

123.    Plaintiff looked towards the back door in attempt to get away from Defendant Paiz and

avoid making eye contact with him.

124.    Plaintiff saw Witness Nick walking through the back door, and she immediately

approached him.

125.    Witness Nick stated to Plaintiff, "Are you comfortable being out there with [Defendant

Paiz]? Are you okay?"

126.    Plaintiff stated "no" and immediately started to cry.

127.    Plaintiff was so distraught that she cannot recall Witness Nick's immediate response.

128.    Plaintiff does recall Witness Nick telling her to "be quiet," because Defendant Paiz was

"right behind [her]."

129.    Plaintiff did not turn around to look at Defendant Paiz and instead walked behind Witness

Nick and exited Defendant IHB through the back door.

130. Plaintiff quickly said goodbye and happy birthday to Mr. Quigly, and immediately went to her vehicle to leave Defendant IHB.

131. The following day, Plaintiff reported to Defendant IHB thirty minutes before her shift was to begin so that she could speak with Defendant Moskal and report Defendant Paiz's sexual harassment and assault.

132. Prior to her arrival at Defendant IHB, Plaintiff checked the schedule and saw that Defendant Paiz was working the same shift as her.

133. As such, when she arrived at Defendant IHB, Plaintiff called Defendant IHB and spoke to the host, Zoey Last Name Unknown, and asked that Defendant Moskal meet her out front as she was fearful of seeing Defendant Paiz.

134. Defendant Moskal met Plaintiff out front of Defendant IHB.

135. Plaintiff proceeded to inform Defendant Moskal of Defendant Paiz's sexual harassment and assault.

136. Plaintiff was tearful throughout her explanation of the timeline of events given the emotional distress Defendant Paiz's unlawful behavior had caused her.

137. In response, Defendant Moskal took a step back, crossed her arms, and stated, "This is not the first time that [Defendant Paiz] has done this."

138. Upon information and belief, Defendant Moskal made this statement because other female employees had reported Defendant Paiz for sexual harassment prior to Plaintiff.

139. Defendant Moskal further stated, "I am not going to make you work today, I am going to send you home."

140. Plaintiff informed Defendant Moskal that she wanted to work her scheduled shift as she could use the money.

141.    Defendant Moskal told her no and that he wanted to send her home.

142.    Defendant Moskal then informed Plaintiff that he would speak to the Executive Chef at

Defendant IHB regarding Defendant Paiz and further stated, "I don't think [Defendant

Paiz] is working tomorrow so you will not have to see him."

143.    At no point in time did Defendant Moskal inform Plaintiff that she could work her shift

and they would send Defendant Paiz home for the day.

144.    As such, Plaintiff followed Defendant Moskal's instructions and did not work her

scheduled shift.

145.    Later that day, Defendant Moskal called Plaintiff on her cell phone and informed her that

they had spoken with Defendant Paiz.

146.    Defendant Moskal informed Plaintiff that "the solution is that [Defendant Paiz] would

like to speak with you one on one and give you an apology and we could move on from

that."

147.    This caused Plaintiff to feel incredibly humiliated, embarrassed, victimized, degraded and

distressed as Defendants refused to take action and wanted Plaintiff to speak with her

harasser.

148.    Plaintiff stated to Defendant Moskal, "I am going to politely decline that because I don't

want an empty apology. I am uncomfortable and I do not want to be alone with him."

149.    On July 3, 2023, Plaintiff made a police report regarding the sexual assault that took

place at Defendant IHB.

150.    On July 5, 2023, Defendant Sawyer texted Plaintiff and asked that she give him a call.

151.    Plaintiff called Defendant Sawyer, who requested Plaintiff describe the events that took

place on June 30, 2023.

152.    Plaintiff informed Defendant Sawyer what took place and informed him that she had reported it to the police.

153.    Defendant Sawyer asked Plaintiff if she was going to return to work at Defendant IHB.

154.    Plaintiff informed Defendant Sawyer that she was not resigning from her position, but she was too uncomfortable to return to work on days Defendant Paiz was scheduled.

155.    Defendant Sawyer offered Plaintiff to work shifts that Defendant Paiz did not work.

156.    However, Plaintiff was previously scheduled to work shifts that had the opportunity to earn the highest number, and amount, of tips.

157.    If Plaintiff were to change her schedule to avoid Defendant Paiz, she would only be able to work shifts which were known to have less and lower tips.

158.    Upon information and belief, at no point in time did any of the Defendants consider or suggest changing Defendant Paiz's shifts so that Plaintiff could continue to work the more favorable shifts and be free from her harasser.

159.    In addition, on July 5, 2023, Defendant Sawyer acknowledged that Plaintiff was not resigning from her position but asked Plaintiff if they should take her off the schedule pending the investigation.

160.    Plaintiff was removed from the schedule and her access to the schedule was blocked.

161.    Upon information and belief, Defendants did not suggest removing, nor did they remove, Defendant Paiz from the schedule pending the investigation so that Plaintiff could continue to work her shifts free from her harasser.

162.    Upon information and belief, at no time was Defendant Paiz reprimanded, suspended, or forced to miss any shifts, until Plaintiff retained undersigned counsel.

163.    On July 17, 2023, having not been permitted to return to work, Plaintiff emailed Defendants and informed them that she wanted to return to Defendant IHB and work her regular shifts without the fear of having to work with her harasser and the individual who sexually assaulted her.

164.    Plaintiff received no response.

165.    Furthermore, Plaintiff discovered that her access to Defendant IHB's schedule program was cut.

166.    Upon information and belief, a Defendant IHB employee's access to the schedule program is only cut when their employment with Defendant IHB ends (e.g., termination, resignation, etc.).

167.    Around July 26, 2024, Defendants were notified of undersigned's representation of Plaintiff.

168.    Around August 16, 2024, Defendant Sawyer advised Plaintiff she had been put back on the schedule.

169.    At no point did Defendant Sawyer inquire if Plaintiff was comfortable returning to work, inquire about her availability, advise as to the employment status of Defendant Paiz, or discuss any concerns Plaintiff had about returning to work given the events described above.

170.    Plaintiff was too emotionally traumatized by Defendant Paiz's actions, as well as the response and handling of the situation by the other Defendants, that she was not comfortable returning to work at Defendant IHB.

171.    As such, Plaintiff resigned from her position.

172.    Plaintiff claims that Defendants discriminated against and terminated Plaintiff because of her sex/gender and because she opposed the unlawful conduct of Defendants related to the above protected class.

173.    The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff on a continuous and on-going basis throughout Plaintiff's employment.

174.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

175.    As a result of the acts and conduct complained of herein, Plaintiff has or may suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails.

176.    Plaintiff also suffered emotional pain, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

177.    Plaintiff has further experienced severe emotional and physical distress.

178.    Plaintiff claims aggravation, activations, and/or exacerbation of any preexisting condition(s).

179.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against all the Defendants.

180.    Plaintiff claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

181.    Plaintiff claims actual discharge as a result of the unlawful discrimination and retaliation and seeks reinstatement.

182.    The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

183.    Plaintiff claims alternatively that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff claims that Defendants owed and breached their duty to Plaintiff to prevent harassment, discrimination and retaliation and is liable therefore for negligence.

### COUNT I
### INTENTIONAL INFLICTION OF
### EMOTIONAL DISTRESS ("IIED")
### (By Plaintiff against Defendant Paiz)

184.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

185.    Plaintiff brings this claim against Defendant Paiz in his individual capacity for intentional infliction of emotional distress ("IIED").

186.    To prove a claim of IIED, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe. Hooten v. Penna. College of Optometry, 601 F.Supp. 1155 (E.D.Pa.1984); Hoy v. Angelone, 691 A.2d 476, 482 (Pa.Super. 1997); Restatement (Second) of Torts § 46.

187.    Defendant Paiz intentionally sexually assaulted, harassed, and inflicted emotional injury on Plaintiff by subjecting her to outrageous treatment beyond all bounds of decency.

18

188.    Defendant Paiz verbally and mentally abused Plaintiff, physically assaulted her, and treated her in a demeaning and inferior manner, which no reasonable person could be expected to endure.

189.    As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained severe emotional distress, resulting in bodily injury, and damages, including punitive damages, to be determined at trial.

## COUNT II
## ASSAULT
### (By Plaintiff against Defendant Paiz)

190.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

191.    Defendant Paiz's harmful and offensive contact with Plaintiff as set forth herein at length, placed her in imminent apprehension of such contact, and constituted an assault upon her.

192.    The aforementioned conduct by Defendant Paiz was committed willfully, knowingly, maliciously, intentionally, wantonly, recklessly, and/or negligently.

193.    As the direct and proximate result of Defendant Paiz's acts as described in the foregoing paragraphs of this Complaint, Plaintiff has suffered mental anguish, humiliation, embarrassment, physical and emotional upset, including but not limited to post-traumatic stress disorder, depression, sleeplessness, isolation, flashbacks, anxiety, the full extent of which injuries are not yet known, and some or all which may be permanent in nature.

194.    As the direct and proximate result of Defendant Paiz's acts as described in the foregoing paragraphs of this Complaint, Plaintiff suffered and will in the future continue to suffer serious pain, mental anguish, emotional upset, and the loss of enjoyment of life's pleasures.

195.    As the direct and proximate result of Defendant Paiz's acts as described in the foregoing

paragraphs of this Complaint, Plaintiff sustained a loss of earnings and earning capacity.

196.    As the direct and proximate result of Defendant Paiz's acts as described in the foregoing

paragraphs of this Complaint, Plaintiff may be compelled to expend monies for medical,

psychological treatment, and therapy.

**COUNT III**
**BATTERY**
**(By Plaintiff against Defendant Paiz)**

197.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

198.    Defendant Paiz's offensive and harmful contact with Plaintiff as set forth herein at length

constituted a battery upon her.

199.    The aforementioned conduct by Defendant Paiz was committed willfully, knowingly,

maliciously, intentionally, wantonly, recklessly, and/or negligently.

200.    As the direct and proximate result of Defendant Paiz's acts as described in the foregoing

paragraphs of this Complaint, Plaintiff has suffered serious and debilitating injuries, mental

anguish, humiliation, embarrassment, physical and emotional upset, including but not limited

to post-traumatic stress disorder, depression, sleeplessness, isolation, flashbacks, anxiety, the

full extent of which injuries are not yet known, and some or all which may be permanent in

nature.

201.    As the direct and proximate result of Defendant Paiz's acts as described in the foregoing

paragraphs of this Complaint, Plaintiff suffered and will in the future continue to suffer

serious pain, mental anguish, emotional upset, and the loss of enjoyment of life's pleasures.

202.    As the direct and proximate result of Defendant Paiz's acts as described in the foregoing

paragraphs of this Complaint, Plaintiff sustained a loss of earnings and earning capacity.

203.    As the direct and proximate result of Defendant Paiz's acts as described in the foregoing

paragraphs of this Complaint, Plaintiff has in the past and will in the future continue to be

compelled to expend large sums of money for medical, psychological treatment, and therapy.

**COUNT IV**
**DISCRIMINATION**
**<u>TITLE VII</u>**
**(By Plaintiff against Defendant IHB)**

204.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

205.    This claim is instituted pursuant to the provisions of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the

unlawful employment practices of the above-named Defendants. Plaintiff complains of

Defendants' violation of Title VII's prohibition against discrimination in employment

based, in whole or in part, upon an employee's sex/gender.

206.    SEC. 2000e-2. [Section 703] states as follows:

(a)  Employer practices

It shall be an unlawful employment practice for an employer –

(1)  to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin; or

(2)  to limit, segregate, or classify his employees or applicants for

employment in any way which would deprive or tend to deprive any individual of

employment opportunities or otherwise adversely affect his status as an employee,

because of such individual's race, color, religion, sex, or national origin.

207.    Defendants engaged in unlawful employment practices prohibited by Title VII by

intentionally discriminating against Plaintiff with respect to her compensation, terms,

conditions, training and privileges of employment because of her sex/gender.

208.    Defendants subjected Plaintiff to adverse tangible employment actions—defined

as significant changes in Plaintiff's employment status, discipline, denial of training,

failure to promote, reassignment with significantly different job responsibilities, and

decisions causing changes in significant changes in her employment benefits.

209.    Plaintiff's protected characteristics (sex/gender) played a determinative factor in

Defendants' decisions.

210.    Defendants cannot show any legitimate nondiscriminatory reasons for their

employment practices and any reasons proffered by Defendants for their actions against

Plaintiff are pretextual and can readily be disbelieved.

211.    Alternatively, Plaintiff's protected status played a motivating part in the

Defendants' decisions even if other factors may also have motivated its actions against

Plaintiff.

212.    Defendants acted with the intent to discriminate.

213.    Defendants acted upon a continuing course of conduct.

214.    As a result of the Defendants' violations of Title VII, Plaintiff has suffered

damages, including, but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT V
## HOSTILE WORK ENVIRONMENT
### Title VII
### (By Plaintiff against Defendant IHB)

215.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

216.     Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

217.     An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

218.     Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action." Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

219.     Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

220.     The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

221.     Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

222.     The discriminatory conduct directly refers to Plaintiff's sex/gender.

223.     Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority and created a hostile work environment.

224.     Derogatory and sexually explicit harassing conduct and comments filled the environment of Plaintiff's work area.

225.     Defendants knew, or should have known, that the derogatory and sexually explicit harassing conduct and comments filled Plaintiff's work environment.

226.     The derogatory and sexually explicit harassing conduct and comments occurred on an almost if not daily basis.

227.     The derogatory and sexually explicit harassing comments and conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness.

228.     Plaintiff subjectively regarded the derogatory and sexually explicit harassing comments and conduct as unwelcome, unwanted, and she objectively opposed the conduct.

229.     The conduct was both severe and pervasive.

230.     The conduct was emotionally damaging and humiliating.

231.     The conduct unreasonably interfered with Plaintiff's work performance.

232.     The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

233.    The Defendants provided a futile avenue for a complaint.

234.    The Defendants retaliated against Plaintiff for her complaints.

235.    The Defendants acted upon a continuing course of conduct.

236.    As a result of the Defendants' violations of Title VII, Plaintiff has suffered

damages including but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.


**COUNT VI**
**RETALIATION**
**TITLE VII**
**(By Plaintiff against Defendant IHB)**

237.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

238.    Title VII protects employees from retaliation for attempting to exercise their

rights under the Act:

> 42 U3.S.C. § 2000e-3. Other unlawful employment practices

> (a) Discrimination for making charges, testifying, assisting, or
> participating in enforcement proceedings. It shall be an unlawful
> employment practice for an employer to discriminate against any of
> his employees . . . because [she] has opposed any practice made an
> unlawful employment practice by this subchapter, or because [she]
> has made a charge, testified, assisted, or participated in any manner
> in an investigation, proceeding, or hearing under this subchapter.

25

239.    The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

240.    Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

241.    "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[s]he was acting under a good faith, reasonable belief that a violation existed.'" <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1085 (3d Cir. 1996); <u>Griffiths v. CIGNA Corp.</u>, 988 F.2d 457, 468 (3d Cir. 1993); and <u>Sumner v. United States Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by <u>Miller v. CIGNA Corp.</u>, 47 F.3d 586 (3d Cir.1995).

242.    Here, Defendants discriminated against Plaintiff because of her protected activity under Title VII.

243.    Plaintiff acted under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex/gender was violated.

244.    Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

245.    There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity.

246.     Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

247.     Defendants acted upon a continuing course of conduct.

248.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and the Defendants' actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

249.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT VII
## DISCRIMINATION
## PHRA § 955
**(By Plaintiff against Defendant IHB)**

250.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

251.     The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

"(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise

discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

252.     Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiffs because of their race.

253.     As a result of the Defendants' violations of the PHRA, Plaintiffs has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

### COUNT VIII
### AIDING AND ABETTING
### PHRA § 955(e)
### (Plaintiff against Individual Defendants only)

254.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

255.     PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

256.     Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

28

**COUNT IX**
**Retaliation**
**PHRA § 955(d)**
**(Plaintiff against All Defendants)**

257.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

258.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For

any person, employer, employment agency or labor organization to discriminate in any

manner against any individual because such individual has opposed any practice

forbidden by this act, or because such individual has made a charge, testified or assisted,

in any manner, in any investigation, proceeding or hearing under this act."

259.    Defendants engaged in an unlawful discriminatory practice by discharging,

retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition

to the unlawful and discriminatory employment practices of Defendants.

260.    As a result of the Defendants' violations of the PHRA, Plaintiff has suffered

damages including but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.


**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.


**DEMAND TO PRESERVE EVIDENCE**

The Defendants are hereby demanded to preserve all physical and electronic information

pertaining in any way to Plaintiff's employment, to her claims alleged herein, her claims to

damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay, and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Respectfully Submitted,
**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff Jane Doe*

By: */s/ Catherine W. Lowry, Esq.*
    Catherine W. Lowry, Esq.
    1628 Pine Street
    Philadelphia, Pennsylvania 19103
Dated:  April 29, 2025    (267) 857-0832